No. 22,735.

MATTIE B. WINTRODE, *Appellant* v. FIDELIA H. WINTRODE and PANSY METZDORF, *Appellees.*

### SYLLABUS BY THE COURT.

EVIDENCE. Evidence examined, and held sufficient as against a demurrer.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion filed March 12, 1921. Reversed.

*J. G. Egan, J. B. Larimer,* and *J. S. Ensminger,* all of Topeka, for the appellant.

*D. R. Hite,* of Topeka, and *Clifford Histed,* of Kansas City, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The appeal is from an order sustaining a demurrer to the plaintiff's evidence.

The action is to recover the possession of real estate and to obtain the partition of the respective interests of the parties and for an accounting of the rents and profits. The petition alleged that Jacob Wintrode until the time of his death was the owner of certain residence property in the city of Topeka, occupied as a homestead by himself and the other members of his family consisting of his wife, Catherine Wintrode, three daughters, Fidelia H. Wintrode, Naomi S. Wintrode, and Austa E. Wintrode, and two sons, A. J. H. Wintrode, and J. T. Wintrode; that after the death of Jacob Wintrode in 1882, his widow and the children sold the homestead for the sum of $4,750, and upon receipt of the consideration verbally agreed together that the money should be invested in four lots at the southeast corner of Tenth avenue and Harrison street in the city of Topeka, and that a house should be built thereon to accommo- .

Wintrode v. Wintrode.

date the entire family, each member of which should be pro-
vided with a home therein, and that the title to the property
should be taken in the names of the three daughters, to be held
by them in trust for the widow and all the children until the
death of Catherine Wintrode; that the title was so taken by
warranty deed in the names of the three daughters, and a large
and commodious house was erected on the lots, to the making
of which improvements the husband of the plaintiff, J. T.
Wintrode, contributed and paid considerable sums, the exact
amounts of which payments plaintiff was not able definitely
to state; that all the members of the family moved into the
house and occupied it as their home, except that J. T. Wintrode
and the plaintiff for their own convenience moved into another
house which they occupied as their residence until J. T.
Wintrode's death, which occurred in 1911. It was alleged that
the death of the widow, Catherine Wintrode, occurred Febru-
ary 7, 1904; that the defendant, Fidelia H. Wintrode, acquired
by mesne conveyances the interests of Austa E. Wintrode and
Adrian J. Wintrode, and that Naomi S. Wintrode died testate
in 1913, and devised her interest to the defendant, Fidelia H.
Wintrode. The plaintiff claims to be a joint owner and tenant
in common with the defendants and entitled to an undivided
one-tenth interest in the property as the heir of her deceased
husband, J. T. Wintrode.

The answer of Fidelia H. Wintrode alleged that she has
been in the open, exclusive and notorious possession of the real
estate, claiming absolute and exclusive title thereto for more
than 15 years, and that any pretended cause of action in favor
of the plaintiff is barred by the statute of limitations. Long
delay and laches was alleged on the part of the plaintiff, and
further it was alleged that in February, 1914, plaintiff insti-
tuted a suit against this defendant for partition of the land,
reciting substantially the same facts alleged in this action but
without joining a cause of action for ejectment, and afterwards
voluntarily dismissed the action; that the bringing of the suit
in 1914 was the first notice this defendant ever had of any
claim of the plaintiff to an interest in the property.

The only question to be determined is whether there was
evidence sufficient to take the case to a jury. Plaintiff called
an attorney who was intimately acquainted with J. T. Wintrode

in his lifetime, who testified that at one time J. T. Wintrode made his home in the house at Tenth and Harrison streets, and that in several conversations with the witness he made the statement that he had some interest in that property, without stating what his partial interest was; that he told the witness he owned a share of the previous property and gave the witness to understand that the interest followed down to this property.

L. M. Wood, an architect, testified that about the middle of March, 1882, at the request of J. T. Wintrode he attended a conference of the family at the old homestead before they had moved out; that J. T. Wintrode, in the presence of the other members of the family, told him that they wanted to employ him as architect for the new home that they were going to build, and said they had "agreed to hold this money from the property in trust for the benefit of the old homestead—trust for the mother as long as she lives to make a home for her."

The witness further testified:

"He did not say who the trustees were. . . . We discussed the arrangements of the rooms; and I agreed to make a pencil sketch. . . . and submit it. I understood the family as it was then existing, was to live there, including J. T. Wintrode and his wife, and they wanted a portion of the rooms on the main floor for their use. . . I made the plans and Captain Wintrode . . . would come every day or two and inspect what I had done, and I gave the pencil drawing to him for the plans and the designs and he took them home . . . and came back and made criticisms and I would make changes until it was finally agreed that we had it right . . . and then I completed the plans and specifications and turned them over to him and he paid me for them. He paid me cash $100—this was in May, 1882. It was agreed that Mr. and Mrs. J. T. Wintrode should take a suite of rooms in the house for their own house. It was located on the main floor in the plans. . . . Mattie B. Wintrode was there at that time, and at that meeting. Yes, she sat next to me. . . . After that whatever conversations I had were with Captain Wintrode—he did all the business. I had no knowledge whatever of what was subsequently really done by the family. I had no further dealings with the family. I had my dealings with Captain Wintrode."

Another witness testified that he saw J. T. Wintrode many times at the property; that the latter showed him the place and was making improvements, and made a statement to the witness about the expense of keeping up the taxes and interest. "I think he made these statements in connection with, and at the time I presented bills to him for collection."

The plaintiff testified that after her marriage to J. T. Wintrode in 1881 she and her husband lived at the family home until the death of Jacob Wintrode. She knew about the sale of the homestead and joined in the deed. She testified to the arrangement about building a new home. She said that the money received from the old homestead went into the new home. This was largely a conclusion, as she admitted that her information came from statements made by her husband. She said, "I do not know of my own knowledge how [the money from the old homestead] was paid nor to whom it was paid. Nor do I know what actually was done with the money, all I know is about the trust contract. I know this money went into the home. . . . I did not see it paid, but that was the contract, and I gave my consent to it." She knew nothing about what the home on Tenth street cost. She did not know what was said at the conversation about how they were to raise the balance of the money to buy the lots and put up the building.

In support of the ruling of the trial court it is urged that there was no evidence to show that the share of J. T. Wintrode in the old homestead was used in the purchase of the Tenth street lots or in the erection of the building. It is true that the plaintiff's evidence was rather weak, especially as to the details of the alleged trust agreement, and in the failure of any evidence to show that the share of J. T. Wintrode in the original homestead was actually applied on the cost of the property, aside from the $100 paid by him to the architect for the plans. It appears to be admitted that the three daughters executed mortgages on the property at the time the building was constructed, and that for a great many years they conducted a boarding house on the property, and so far as the evidence shows, paid the mortgages themselves. But keeping in mind that on the demurrer plaintiff was entitled to every reasonable inference in her favor which might be drawn from the facts and circumstances shown, we think that there was not an entire failure of evidence.

Without passing upon the effect of the statute of limitations, it is sufficient to say that the court was not justified in sustaining the demurrer on that ground because there were circumstances which tended to show that, if the trust agreement

existed, there was no repudiation of it by Fidelia H. Wintrode prior to the death of J. T. Wintrode.

The conclusion we have reached is that it was error to sustain the demurrer and therefore the judgment will be reversed and the cause remanded for further proceedings.